**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:10cv20**

| | | |
|---|---|---|
| **ANGELA R. SHEPPARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

  **THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of Referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Judgment on the Pleadings.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

---

[1]  Inasmuch as plaintiff has moved under Rule 56, Fed.R.Civ.P., and defendant has moved under Rule 12, the court will apply the Rule 56 standard.

# FINDINGS AND CONCLUSIONS

## I.  Administrative History

Plaintiff filed her first application for a period of disability and Disability Insurance Benefits on May 19, 2003. Plaintiff's claim was denied initially on August 7, 2003, and no request was made for reconsideration.

Plaintiff filed a second application for disability and Disability Insurance Benefits on July 29, 2004, again alleging disability beginning May 29, 2002.  This claim was denied initially and on reconsideration, and a timely request for hearing before an administrative law judge ("ALJ") was made February 8, 2006.  More than two years later, the ALJ conducted the requested hearing on April 21, 2008, at which plaintiff was represented by counsel.  The hearing lasted 23 minutes.  It is undisputed that plaintiff had sufficient quarters of coverage to remain insured through December 31, 2009.

On June 27, 2008, the ALJ issued his decision denying the relief sought. On July 29, 2008, plaintiff requested that the Appeals Council review the adverse decision and requested a copy of the hearing tape or time to submit additional evidence. By letter dated September 5, 2009, the Appeals Council informed counsel that plaintiff had 25 days to submit additional evidence. Administrative Record ("A.R."), 9-10.  By letter dated September 28, 2009, copies of plaintiff's medical records from Park Ridge

Medical Associates Psychiatry and Psychopharmacology dated November 6, 2008, through August 20, 2009 were submitted to the Appeals Council for consideration. A.R., 601-18.

The Appeals Council initially denied plaintiff's Request for Review on October 23, 2009. A.R., 6-8. By letter dated October 28, 2009, copies of medical records for Ms. Sheppard from Margaret R. Pardee Memorial Hospital dated April 13, 2006, through July 1, 2009, were submitted to the Appeals Council for consideration. On November 16, 2009, the Appeals Council vacated the October 23, 2009 decision and issued a new decision denying the Plaintiff's request for review of the decision of Judge Hild. A.R., 2-4. In that decision, the Appeals Council noted receipt and consideration of the evidence submitted on September 28, 2009 by plaintiff's counsel, but failed to show receipt or consideration of the evidence submitted on October 28, 2009. The Appeals Council denied plaintiff's request for review of the decision of the ALJ, and plaintiff timely filed this action on January 18, 2010.

## II.    Factual Background

While the record contains extensive exhibits concerning the details of plaintiff's medical and mental health treatment, the factual background can be gleaned from the testimony provided by plaintiff at the hearing.

As of the date of the hearing, plaintiff testified that she was 42 years old and had graduated from high school. A.R.622. Her last work, from which she appears to draw long-term disability insurance benefits, was at a General Electric ("GE") plant assembling small lots and lifting lights. She testified that she worked on various assembly lines at GE for eight years. Prior to working at GE, plaintiff worked at Kyocera, also on an assembly line. A.R., 624 -25.

On the alleged date of onset, May 29, 2002, plaintiff testified that she was on the job "lifting lights in small lots and felt something pop in my neck." A.R., 625. She was taken out of work by her physician and her injury led to a back fusion in April of 2003. A.R., 622. To her credit, she testified that following surgery, she asked to be allowed to return to work early. A.R., 625-26. She stated that she returned to work on an easier assembly line where she would not have to use her body as much. Even such lighter work, however, proved to be an unsuccessful return to work:

> There was a spot behind me where I would have to get parts out of a big metal bin. I reached into the bin and when I bent over, everything on my right side started going numb…I went back to the doctor about that, and that's when they pulled me out of work completely.

A.R., 628. While plaintiff could not remember the months of such return to work, it appears that such occurred in the fall of 2003, a period during which plaintiff testified that her doctors were keeping her "pretty well doped up." A.R., 629.

Plaintiff further testified that she went through formal pain management at a pain management clinic, and later had a neuro-stimulation implant. She stated that the implant alleviates a lot of her pain, although she still has to take pain medication. In 2005, she had to have a third procedure to replace the stimulator. A.R., 630. Plaintiff testified that since that time - - 2005 - - she is able to sit for about ten minutes, and then she will stand for about ten minutes. She is constantly up or down, trying to get relief from her pain. A.R., 630-39. At the time of the hearing, she testified that she had pain in her neck and right side, specifically her right arm. A.R., 631.

Plaintiff testified that the only medication she is taking for pain is *Aleve*, an over-the-counter pain reliever. She stated that she lost her medical insurance in August of 2008 and was no longer able to afford the medications that she was prescribed. A.R., 631. While the ALJ inquired as to whether plaintiff had income, A.R., 623, he made no further inquiry as to whether such income was sufficient to provide for the necessities of life and to pay for medical visits and medicines outright or to pay insurance premiums and co-pays. Further, in the less than two transcript pages of questioning by the ALJ, no inquiry was made as to whether plaintiff had attempted to secure medical care and medications from charitable or other sources. See A.R., 623-24.

Plaintiff also testified that she has to have help with all daily activities. Her husband gets her dressed before he goes to work. Her sons help her with her hair and her future daughter-in-law puts on her makeup. She stated "it hurts my arm to stay in one position too long doing anything." She has to have help getting out of the bathtub. If she sits or stands for longer than ten minutes, she starts going numb in her arms and then her legs. She described her pain as "excruciating," like "pins being inserted into the neck and shoulder." A.R., 632. Plaintiff is limited in driving and distance riding. She testified that she is in the car less than 50 miles total per week. A.R., 634. Lifting objects is extremely difficult for her. She testified that she cannot even lift a gallon of milk without excruciating pain. She is limited by both pain and numbness in her hands. A.R., 638. For household chores, she testified that she is able to wash dishes for about ten minutes and can wipe off the countertops. She testified that her children do the vacuuming, sweeping, and mopping. A.R., 638-639. She further stated that she spends over half of her day lying in bed or in her recliner.

There is also testimony concerning her mental health. She testified that she had problems from an emotional standpoint for a number of years and had been treated by mental health therapy and given prescription medications. She testified that her back injury and pain made her emotional problems worse. A.R., 635. Plaintiff receives approximately $1,900.00 per month from long-term disability benefits. A.R., 627.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, <u>Smith v. Schwieker</u>, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. <u>Hays v. Sullivan</u>, <u>supra</u>.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's 23 minute administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits concerning plaintiff's physical and mental health, reports of activity, and other matters, contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary

materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is not.

**B.    Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f).

In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process. To his credit, the Commissioner concedes in his brief that

> if this Court finds that the ALJ erred in assessing the severity of Plaintiff's mental impairments or her credibility then his step-five finding cannot stand.

Memorandum (#13), at 18. For the reasons that follow, the court finds no error in the ALJ's step-two findings concerning the severity of plaintiff's mental impairments; rather, the court finds that the ALJ erred in his credibility determination, requiring remand for the award of benefits.

### C.    The Administrative Decision

The ALJ issued an unfavorable decision on June 27, 2008, finding that plaintiff was not "disabled," as defined by the Act, from May 29, 2002, through the date of the decision. A.R., 16-24. Applying the five-step sequential evaluation process, see 20 C.F.R. § 404.1520, at step one the ALJ found that plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date of May 29, 2002, through the date of the decision. A.R., 18. At step two he found that plaintiff had the following severe impairment: cervical degenerative disc disease—status post cervical fusion. Id. At step three the ALJ determined that none of plaintiff's medically determinable impairments, or combination thereof, met or

medically equaled any impairment in the Listing of Impairments, see 20 C.F.R. 404, subpart P, Regulation 4, Appendix 1. A.R., 20.

Before reaching the fourth step, the ALJ assessed plaintiff's residual functional capacity ("RFC") and found that she retained the RFC "to perform the full range of light work as defined in 20 C.F.R. [§] 404.1567(b)." A.R., 20. In making such determination, the ALJ considered plaintiff's testimony regarding her impairments' severity and resulting functional limitations, but deemed this testimony not entirely credible. A.R., 21-22. At step four, the ALJ concluded that plaintiff could not perform any past relevant work because the exertional demands of this work exceeded her RFC. A.R., 23.

At step five, the ALJ concluded that a significant number of jobs exist in the national economy that plaintiff could nevertheless perform. A.R., 23. The ALJ concluded that plaintiff was not under a "disability" as defined by the Act at any time from May 29, 2002, the alleged onset date, through the date of the decision. Tr., 23.

**D.     Discussion: Evaluating Allegations of Pain and Other Subjective Complaints**

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints.[2] The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaints was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[3]

---

[2] Plaintiff has also challenged the ALJ's determination concerning the severity of her mental illness. While the court would typically address such contention at length, the primary assignment of error as to credibility is dispositive. To summarize, the court can find no legal error as to the ALJ's consideration of the severity of her mental health issues and it appears that such determination is supported by substantial evidence inasmuch as such condition appears to have been situational and responded well to the course of treatment prescribed by her mental health care providers.

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to which they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

There is no contention of error concerning the first step of the <u>Craig</u> analysis.

Instead, plaintiff takes issue with the ALJ's credibility determination at the second

step. Specifically, the ALJ determined as follows:

> There are discrepancies in the claimant's testimony and statements of record pertaining to her pain and daily activities. The claimant initially testified that her stimulator "works great" for pain relief. Later, she testified to significant pain limiting her to sitting, standing, and walking no more than 10 minutes at a time. The claimants statements of record indicate that she engages in a broad range of light and sedentary daily activities. She testified that she spends over half of her day lying around.
>
> The claimant's statements of record and the medical evidence do not support the frequency and severity of pain and functional limitations alleged.

A.R., 21-22. To further support his credibility determination, the ALJ goes on to cite

to exhibit "E-34," which appears to be found at A.R. 99-110. Based on such report,

the ALJ determined that plaintiff

> engages in a broad range of light and sedentary daily activities. She states that she is able to walk one and one-half miles before having to stop and rest. (E section, pg. 34) The claimant does not take prescription medication for pain. She reports noticeable pain relief through treatment with a spinal cord stimulator.

A.R., 22.

Review of the exhibit relied on by the ALJ, which appears to be a "Function

Report,"completed by an agency employee on August 3, 2004, A.R., 110, reveals that

the summary of daily activities was completed in August 2004, which was in close

temporal proximity to the June 2004 (A.R. 240-42) placement of a stimulator used to relieve pain. The testimony which the ALJ discredits based in part on such report was given in April 2008, nearly four years later.  In between, the record contains evidence that the stimulator that was in play in August 2004 was  replaced in 2006 (A.R. 180-82), and that plaintiff sought and followed a course of prescribed treatment with medications well after the stimulator was first implanted.  While there is a dispute as to whether the stimulator was damaged in an accident in 2004, the evidence of record indicates that plaintiff had a continuous and significant problem with pain in her neck and arm since at least June 2004.  Even after replacement of the stimulator in April 2006, the pain continued and plaintiff continued medical care for as long as she had insurance.

In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make  credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).

In this case, the ALJ relied heavily on the August 2004 "Function Report" in discrediting plaintiff's April 2008 testimony. The court has closely reviewed the transcript of the administrative hearing and it appears that the plaintiff, after being questioned by the ALJ briefly, testified on examination by her own attorney as to not only her pain, but as to the extensive impact such pain then had on her daily activities. Despite such testimony and being re-tendered to the ALJ for any further questions, A.R., 639, the ALJ asked plaintiff no questions concerning the inconsistency between the August 2004 report and her April 2008 testimony. Indeed, the only follow up question the ALJ asked was "is there anything else you'd like to tell?" Id.

By not inquiring of the witness as to a prior statement the ALJ found to be discrediting, the ALJ failed to afford plaintiff an opportunity to explain the inconsistency. This is not to say that the adversarial process applicable in courts of law should be applied in administrative Social Security hearings:

> Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .

Sims v. Apfel, 530 U.S. 103, 111 (2000). While not adversarial, the salient point is that the ALJ erred in relying on a report of daily activities that was nearly four years old without making further inquiry of the plaintiff at the hearing or by considering the substantial objective medical evidence concerning the progression of plaintiff's pain

through June 2007 that may well have supported such deterioration. Due to a lack of temporal proximity or evidence that would bridge the four-year gap, the 2004 Function Report provides, at best, no more than a scintilla of support for discrediting sworn testimony concerning daily activities in 2008.

It further appears that the ALJ discredited plaintiff's testimony of disabling pain because, at the time of the hearing in 2008, her condition was no longer being followed by a physician and she was not taking prescribed pain relievers. At the hearing, the ALJ's inquiry into plaintiff's lack of medical care or treatment is limited:

> Q.    Do you still see the doctor who did the fusion?
>
> A.    No.
>
> Q.    What are you doing for your back?
>
> A.    I am taking Aleve at the moment
>
> Q.    That's it?
>
> A.    That's it.
>
> Q.    Are you seeing any doctors?
>
> A.    I have no medical insurance.
>
> Q.    Uh-huh. Do you have any kind of income?
>
> A.    My Long-term Disability.

A.R., at 622-23.

In <u>Preston v. Heckler</u>, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for

the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an
> alternative basis for denying benefits, the fact finder may draw upon it
> to negate at any stage of the sequential analysis an otherwise allowable
> finding of disability. And because in the general proof scheme, this basis
> for denying benefits is analogous to that involving the establishment of
> residual functional capacity to engage in other gainful employment, **the
> burden to establish it by substantial evidence should also be on the
> Secretary.**

<u>Id.</u>, at 990 (emphasis added). The Social Security Regulations provide that

> [i]n order to get benefits, you must follow treatment prescribed by your
> physician if this treatment can restore your ability to work. . . . If you do
> not follow the prescribed treatment without a good reason, we will not
> find you disabled, or if you are already receiving benefits, we will stop
> paying you benefits.

20 C.F.R. 404.1530(a)-(b). The regulations list the following "good reason[s] for not

following treatment," 20 C.F.R. 404.1530(c), and Social Security Ruling 82-59

discusses "justifiable cause for failure to follow prescribed treatment" in more detail.

It adds more reasons to the list set out in the above regulation, including the inability

to afford treatment, which is precisely what plaintiff testified to at the hearing. The

ruling explains:

> The individual is unable to afford prescribed treatment which he or she
> is willing to accept, but for which free community resources are
> unavailable. Although a free or subsidized source of treatment is often
> available, the claim may be allowed when such treatment is not
> reasonably available in the local community. All possible resources (e.g.,

> clinics, charitable and public assistance agencies, etc.) must be explored.
> Contacts with such resources and the plaintiff's financial circumstances
> must be documented.

S.S.R. 82-59, at 5. In Gordon v. Schweiker, 725 F.2d 231, 237, (4th Cir. 1984), the

appellate court upheld the ruling's requirement that a plaintiff show he or she has

exhausted all sources of free or subsidized treatment and document his or her financial

circumstances before a plaintiff can show good cause for failing to comply with

prescribed treatment. Id. Clearly, however, the burden of production is the

Commissioner's with respect to the issue of failing to follow prescribed treatment. See

Preston v. Heckler, supra, at 990. This burden has not been met.

While the ALJ relies on the lack of continued medical care and the failure to

take prescribed medication as additional reasons why he discredited her testimony,

A.R., 21-22, he failed to make a sufficient inquiry as to reasons why she was no

longer under a doctors care or was taking prescription pain relievers. While the ALJ

did ask her if she had an income and her own counsel elicited later such disability

payment was $1900 per month, such limited evidence was not sufficient to conclude

that plaintiff could afford needed care as it did not take into account whether the

payment was gross or net, the plaintiff's other living expenses, or the number of

persons in the household who were dependent on such income.

In accordance with Preston v. Heckler, supra, the undersigned finds that the ALJ's credibility determination is not supported by substantial evidence. While the court agrees with the Commissioner that pain is not in and of itself disabling, plaintiff has presented substantial evidence concerning the disabling impact her pain has had on her life through a showing concerning her activities of daily living that has not been properly discredited. In accordance with the teachings of the Court of Appeals for the Fourth Circuit in Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986), the undersigned must find that the ALJ did not properly consider plaintiff's testimony concerning activities of daily living and that plaintiff's assignment of error is meritorious. See also 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). The nature of a claimant's symptoms, the effectiveness of any medication she is taking, and her daily activities are all relevant factors when considering subjective symptoms such as pain. Id.

As the Commissioner has conceded "if this Court finds that the ALJ erred in assessing . . . her credibility then his step-five finding cannot stand." Commissioner's Memorandum (#13), at 18. The undersigned must, therefore, recommend that the decision of the ALJ be reversed and that this action be remanded to the Commissioner for purposes of awarding plaintiff benefits.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)    the decision of the Commissioner, denying the relief sought by plaintiff, be **REVERSED**;

(2)    the plaintiff's Motion for Summary Judgment be **GRANTED**;

(3)    the Commissioner's Motion for Judgment on the Pleadings be **DENIED**; and

(4)    this action be **REMANDED** to the Commissioner for purposes of awarding benefits.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  <u>Thomas v. Arn</u>, 474 U.S.

140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

## Providing Notice of Amicable Resolution

In the event the parties are able to amicably resolve this civil action within the time provided for objections, such amicable resolution and a timeline for its implementation should be communicated to the court via a Notice of Amicable Resolution filed not later than the time provided above.

Signed: March 28, 2011

Dennis L. Howell
United States Magistrate Judge